## ALEXANDER EAGLESON *v.* JOHN CLARK and WILLIAM C. FARLEY.

The statute of 1855, amendatory of the mechanics' lien law of 1851, authorizes the court to award costs as may be just and equitable.

When an owner of real estate, after a sub-contractor has filed a notice to create a lien thereon, retains in his hands the amount claimed, and interposes no obstacle to its collection, but suffers a default as against himself; the owner, where the original contractor, at his own request, has been made a party to the proceeding, should not be charged with the costs of litigation between the claimant and contractor, to determine, in effect, the right, as between them, to the money held by the owner.

The omission of the owner to pay the money into court, or to the county clerk, in discharge of the lien, will not operate, in case he makes no defence, to charge him with costs created by such litigation between the contractor and the claimant.

The amount of the claim, with the costs of the owner's default and of the judgment against him thereon, are chargeable against the property, and should be decreed, to constitute a specific lien thereon.

The judgment should direct a sale of the right, title and interest of the owner in the house and lot on the day the lien was filed—that the proceeds be applied to the satisfaction of the claim and costs of default—and that the claimant have execution against the contractor for the deficiency, if any, and for such further costs as have accrued in the litigation.

*It seems*, that where neither the owner nor sub-contractor desire the introduction of the contractor as a party defendant, and the latter applies to the court to be let in; an order granting the application would be conditioned—in case of the contractor's insolvency or the like—that he file security for the costs of the litigation.

GENERAL TERM, DECEMBER, 1855.

THIS case came before the full bench, upon an appeal, by the defendant, Clark, from an order, entered at special term,

Eagleson *v.* Clark.

denying a motion made by him, under the following circumstances : The plaintiff filed a notice, under the act of 1851, "for the better security of mechanics and others in the city of New York," to acquire a lien for the value of materials furnished by the plaintiff, pursuant to an agreement with the defendant, Farley, and in conformity with a contract entered into by the latter with the owner, for the erection of a building upon land owned by Clark.

At the time the notice of lien was filed, there was due, or thereafter to become due, from Clark to Farley, under the contract between them, the sum of $333 35, which he retained in his hands.   Other moneys, earned by the contractor, were paid by the owner to him, and to other claimants, during the existence of this lien.

On the return day of a notice, served upon him by the plaintiff, under the fourth section of the act, to bring the lien to a close, he failed to appear either in person or by counsel, and suffered default.   The contractor, however, appeared, and requested of the claimant to be let in as a party to the proceeding; whereupon, with the claimant's consent, an order for that purpose, and for the joining of issues between the plaintiff and the defendants, was entered.   The plaintiff served a complaint upon the contractor, who put in a separate answer thereto, setting up a defence and counter claim.   A protracted litigation ensued between them.

The cause having been referred, a report was made in the plaintiff's favor for $335 35, being the amount of his claim against the defendant, Farley, as stated in the notice of lien. For this sum, and $130 26 costs—in which were included $70, fees of the referee—amounting in all to $465 61, the plaintiff entered judgment against the contractor personally, and directing that the house and lot, belonging to the owner, be sold, and the proceeds of the sale be applied to the payment of the sum of $465 61, above mentioned.

Upon an affidavit disclosing these facts, and alleging that he had not, until apprised of the judgment by a note from the plaintiff's attorney, either participated in, or received

notice of any of the proceedings in the case, subsequently to his notification to appear and submit to an accounting, the defendant, Clark, obtained an order to show cause why the judgment, so far as it affected his property, should not be reduced to $335 35, and why he should not be allowed to pay this sum, less the actual costs of effecting and discharging the lien therefor, into court or to the county clerk or the plaintiff, in discharge of his liability.

After a hearing, under this order to show cause, the application of the defendant, Clark, was denied, without costs of motion, and he thereupon appealed to the general term.

*Thomas James Glover,* for the appellant, (owner,) presented the following argument:

I. Clark's affidavit shows that he has no funds in his hands to pay the costs, nor any sum whatever, except the amount of the lien, $333 35. To charge him with these costs, incurred by Farley after Clark's default, without any act of his, is gross injustice. No court would commit so palpable an act of injustice, unless impelled thereto by the stern letter of the law. Where the court has full and absolute power to award costs, " as may be just," it would be wholly inexcusable to do that injustice. By the 5th section of the act of 1855, page 761, " the court may award costs against such of the parties as shall be just." The proceeding is equitable in its form and character. It is to be carried on, and judgment rendered upon equitable principles, and costs are now, by statute, to be awarded " as shall be just." It is not "just" to punish the owner—who has no funds to pay the costs, but only enough to pay the amount of the lien—when the costs have been incurred, not by his defence, unsuccessful or otherwise, nor by any act of his, but by a litigation between the plaintiff and the contractor, upon peculiar and personal issues affecting them alone, to which he was a total stranger, over which he had no control, and where he made no defence or opposition to the plaintiff's claims. It is unjust, because it

Eagleson v. Clark.

makes the owner responsible beyond the amount of his contract, not for any default of his, but for the costs of a litigation between other parties not superinduced by any wrong on his part. It is a new question, and is of great moment to the defendant, Clark, as well as of interest for future cases.

II. We do not doubt that the plaintiff is entitled to his full costs as against Farley, the contractor; we do object to Clark's being compelled to pay them. It is said that Clark might have paid the amount of the lien to the county clerk. By the order of November 21, it appears that the notice to close was served on the same day that the lien was filed; wherefore he had no opportunity to pay the county clerk before suit commenced. But suppose he might have paid the county clerk, or have paid the money into court, what is the fair, necessary and legitimate consequence of his omission? It is not the omission of a duty, but of the availing of a permission or privilege, and the only legitimate result entailed upon him is to throw upon him the interest and the ordinary costs of a default and assessment of damages. But surely there is no justice in inflicting upon him any punishment beyond that. So, by suffering a default against him, he admits his willingness to pay the amount of the lien, with the usual costs of a default, but no man is to be presumed to admit any thing more.

III. It is said that it is to be presumed the owner is secured. Let him who affirms it prove it; but the contrary appears. He swears he has no funds to pay these costs. Besides, such a presumption does violence to the benign rules of construction laid down by this court in the lien cases. They require proof that the owner has a fund in his hands. In *Doughty* v. *Devlin*, (1 E. D. Smith, pp. 626, 646,) it was left in doubt whether costs are ultimately to come out of the fund, or are to be paid by the owner in addition to the contract price. That doubt is resolved against the owner by this decision, but we are firmly of the hope that the rule cannot be so settled. It must ultimately be the other way, if justice is to prevail.

IV. The objection raised against us being thus disposed of, let us consider upon what principles the court should proceed in awarding costs. In the first place, by the act of 1855, the court has full power and ample discretion to award costs as may be just. The court is no longer compelled to commit injustice in this matter. Costs are to be awarded by the court. They do not follow as a matter of course. The conscience of the court is to be satisfied before costs can be adjudged. It is the act of the court that must be invoked. But, in this case, the plaintiff took it for granted that the costs were recoverable against the owner; for, though it is said he gave notice to Farley's attorney of application for judgment on the referee's report, yet Clark, who alone was interested in this question, had no notice of it, and certainly it cannot be pretended that it entered into the mind of the court, on that formal (and, as to Clark, *ex parte*) motion, to determine this important question without hearing Clark. As he had no opportunity of being heard before on this question, the court will now award costs " as may be just."

V. This court had expounded the mechanics' lien act upon benign, just and enlarged principles, treating the proceeding as equitable in its character, and adapting the remedy to cases as they arose, in such manner as to prevent hardship and injustice. It had provided that the contractor might be made a co-defendant, to give him a chance to contest the claim, and to hold him bound by the result. And so in other respects, the proceeding was treated as a suit in equity. The act of 1855 follows in the same spirit, with a legislative sanction of this judicial exposition, and to impress this character more deeply, confers upon the court power to award costs, as shall be just. Now this is precisely what a court of equity always had. In equity, costs are always in the sound, equitable discretion of the court; not an arbitrary but a judicial discretion, the principles of whose actions are easily ascertained. In equity, then, where a suit is brought by A., against B. and C., to collect a debt due by B. to A., out of

moneys belonging to B. in the hands of C., the latter was never chargeable with costs, unless he had inequitably denied or resisted the claim. Thus, in *Stafford* v. *Mott*, 3 Paige, 100, a judgment creditor's bill was filed against Mott, as judgment debtor, and against Comstock, to reach amount of judgment recovered by Mott against Comstock. Comstock claimed a set off for a less sum, and offered to pay the balance as the court should direct. The decree of the vice-chancellor did not allow him his costs out of the fund. The chancellor says: "This defendant is made a party, not on account of any fault or misconduct on his part, but to enable the complainants to obtain a debt due from him to their judgment debtor, and which debt he was ready and willing to pay, after deducting what he had a legal right to retain by way of set off against Mott. "He was properly made a defendant, although he was not strictly a necessary party. "It does not follow, however, that an innocent defendant is to lose his costs, although he is a necessary party, to enable the complainant to obtain the relief to which he entitled as against another defendant, or otherwise. "The costs of such a party, according to the ordinary practice of the court, must be paid out of the fund, if there is a fund recovered in the suit. "And where there is no fund, the complainant is frequently compelled to pay the costs himself, and is permitted to recover them over against the other defendants, whose default or misconduct has made such costs necessary. "In this case great injustice will be done to this appellant, if he is compelled to sustain the whole expense of putting in his answer, for the benefit of the complainant and for the purpose of obtaining his equitable and legal claim to set off." How wide the difference between the language and principles of the learned chancellor, and the rule adopted in this case, and yet, although there are circumstantial differences, there is no distinction in principle between the two cases. Clark, the owner, is not the debtor of Eagleson. He is in no privity with him, and is in no default so far as any duty or obligation to him is concerned. He is the debtor of

Farley, the contractor. He neither denies nor .disputes the debt, but expressly admits it. He puts no obstacle in the way of Eagleson's recovering. He is willing to pay the amount of Eagleson's claim. Eagleson seeks, by his equitable suit, to reach the fund in Clark's hands, and makes Clark unnecessarily a defendant, but Eagleson meets with no opposition from Clark; Farley alone contests the claim, and Farley alone ought personally to bear the expense of that litigation. It is difficult to conceive a more naked case of injustice than that of mulcting the owner in such a case with the costs of a litigation, not caused by him, in which he had no interest, and where the effect is to make him pay beyond the amount of his contract.

VI. Clark had no right to withhold from Farley any thing more than the amount of the lien. He could not lawfully retain any thing to pay costs not yet incurred nor ascertainable, and which possibly might never accrue.

*William Venvill* and *Alexander Kursheedt,* for the respondent, (claimant,) made and argued the following points :

I. By the eleventh section of the lien law of 1851, the owner is authorized to pay the amount of the lien to the county clerk and discharge the lien.

II. Clark, the owner, neglected to do this, and shows, by his own affidavit, that he paid over all amounts due Farley, except this sum.

III. The judgment is regular, the only party appearing having notice of motion therefor.

IV. The judgment under the 10th section of the same act carries costs against one of the defendants, personally, and against the property of the other.

V. The motion of the defendant, Clark, to reduce the amount of costs, is, in effect, to ask the benefit at the end of the action which his own carelessness deprived him of at the beginning.

VI. In this connection he does not show that Farley did

not indemnify him, nor does he show that he was either wrongly advised or misled, nor does he offer any other excuse.

VII. This court already, at special term, in April, 1854, decided, (in *Dunning and Finch* v. *Abraham Clark*, (a) that the costs of a writ of inquiry and assessment must be borne by the owner, even if the money be paid into court in discharge of the lien.

VIII. The motion to reduce the amount of costs rests only on the fifth section of the act of 1855, p. 760.

IX. There is nothing in this section having any proper bearing on this question, because the courts never interpose when the party, by his own negligence, incurs costs, although they impose costs as the penalty for being compelled to ask the (in such case) granted clemency of the court.

X. The motion of the defendant, Clark, should be denied, with costs, in the special term, and costs in the general term also.

By THE COURT. WOODRUFF, J.—I cannot resist the conviction that the defendant, Clark, ought not to be charged with the costs of the present litigation.

The plaintiff having filed a notice to create a lien upon the property of Clark, under the act for the security of mechanics, &c., the latter retained in his hands the amount claimed by the plaintiff, and, when the foreclosure was commenced, interposed no obstacle to the collection of the money, but suffered a default.

By request of Farley, the contractor, the plaintiff consented that he might come in and defend the claim, and that he be made a party defendant. This being done, the plaintiff and Farley have since been engaged in a protracted litigation, to determine, in effect, which of the two last named is entitled to the money in the hands of Clark. In respect to this litigation, Clark has been in the situation of a mere stakeholder, wholly indifferent between those parties, and doing nothing to prevent the plaintiff's recovery.

(a) *Ante*, p. 535.

A person so situated would, under the general principles governing courts of equity, have been entitled to interplead the two adverse claimants, and, so far from being charged with costs, would have been permitted to reserve out of the fund his costs of interpleading the others.

It is true that, under the former system, he would have been required to commence the proceeding and bring the money into court, if he would entitle himself to costs. But it seems to me, in accordance with the most obvious equity, that a defendant, who is indifferent between the contending parties, ready to pay to whomsoever is entitled, creates no costs by his own act or defence, should be protected against the expenses of a litigation, to which he has not been a party, in which the respective claimants have voluntarily engaged to settle their own rights. It was not at his instance that Farley was made a defendant, and let in to set up a defence ; and, although it is probable that if the application had been made by Farley to the court, the order to make him a defendant would have been made, yet, if the plaintiff had shown any sufficient reason therefor, as the insolvency of Farley, for example, doubtless the court would have re-quired him to give security to pay the costs of the litigation, if his defence should prove unfounded. If neither Clark nor the plaintiff desired his intervention, such a condition would have been quite reasonable, if his solvency was questionable.

It is urged that Clark might have paid the money to the county clerk in discharge of the lien, and not having done so, he is in fault, and ought to be charged with costs. If the costs were in any degree caused by the failure of Clark to make such payment, or the plaintiff was injured by such omission, there would be plausibility in the suggestion. But that is not so. Had he paid in the money, it would have been a mere substitution of the money, for the premises which were subject to the lien. The litigation must have continued in precisely the same manner. It was his privilege to dis-charge the lien on his premises, if he desired to do so for his own convenience, but the litigation is not affected thereby.

Eagleson *v.* Clark.

The plaintiff has not been kept out of his money by this omission, and he has the lien, which the statute gives him, upon the premises affected thereby.

The statute of 1855 authorizes the court to award costs as may be just, and to my mind it is clearly just and equitable that the plaintiff should have judgment against Farley for the whole amount reported due, and costs—that the claim for the amount reported due, $335 35, should be declared to constitute a specific lien upon the premises—and I yield, though not without much hesitation, to the suggestion of the first judge, that this lien be extended to costs against the owner, as upon default of answer. And the judgment should direct a sale of the right, title and interest of the defendant, Clark, therein, on the day of the filing the notice with the county clerk to raise that sum, and that the proceeds of sale to that extent should be applied to the satisfaction of the plaintiff's judgment, and that the plaintiff have execution against Farley for the deficiency (if any) and the residue of such judgment.

The order at special term should be made to conform to these views. The question not having been heretofore settled, no costs should be allowed to either party on the appeal.

INGRAHAM, FIRST J., concurring.—I think the defendant, Clark, should pay the costs rendered necessary by his not paying the money, without suit, excluding all costs which are chargeable against Farley, in consequence of his defending the action.