By the Court*—Monell, J.
— A court of equity has power to give relief, where there lias been a mistake or omission, in a written agreement, and may, in an appropriate action, conform the agreement to the intent of the parties. In such cases,’ parol evidence of the agreement, or intent of the parties, is admissible, to prove that by mistake something material has been omitted ; or that it contains more than was intended ; or that it varies from their intent by expressing something different in substance from the truth of that intent.
These cases are perhaps the only exception to the general rule that parol evidence is inadmissible to vary or explain a written instrument (2 Phil. Ev., 566). The justice was right therefore in admitting the evidence objected to by the defendant, and his exception thereto is .not well taken.
Although the power of a court of equity to give re'ief in these cases is unquestionable, yet such power is exercised with great caution ; and unless the mistake is clearly made.out, by proofs. entirely satisfactory, the court will withhold relief, upon the ground that the written paper ought to be treated as a full and correct expression of the intent, until the contrary is established beyond reasonable controversy (Gillespy v. Moon, 2 Johns. Ch., 585; Lyman v. United States Ins. Co., Id., 630; Marquis of Townshend v. Slangroven, 6 Ves. Jr., 52S). The language of these cases is, that it requires the most demonstrative proof, especially against the answer denying the mistake. And the evidence must be rejected unless it is free from doubt, and clearly • preponderates,—Lord Thurlow, in one case (Lady Shelburn v. Lord Inchiquin, 1 Bro. C. C., 338), saying “it must bo irrefragible evidence and Mr. Justice Story, in his Commentary on Equity Jurisprudence, saying that relief will not be afforded “ whenever the evidence is loose, equivocal, or contradictory, or it is in its texture open to doubt or to opposing presumptions” (Story Eq., § 127).
The taxes contemplated by the agreement in this case, were the State, County and City tax tor the year 1863, meaning the calendar year, from January 1. 1863, to December 31, 1863. These taxes were confirmed and became a lien upon the land on the 2 id of September, 1863. Upon the lot in question they amounted $283.15.
*470 The dispute between the parties is, whether it was the agreement and intention of the parties, that the plaintiff was to pay the proportion of that sum which the period of time between the 23d of September and the first day of November (1 month and 8 days) bore to twelve months, and the defendant the balance, or whether the defendant was to pay the proportion which the period of time between November 1, 1863, and January 1, 1864, (two months) bore to the whole of the year 1863.
The written contract of sale and purchase was made on the first day of July, 1863. By ils terms, the deed was to be delivered and possession given on the first day of November, 1863 ; and the prem'sies were to be conveyed free of all incumbrances, “ except the party of the second party to pay proportion of the taxes for the year 1863, from November 1,1863.” The plain construction of this clause (in view of the fact that the taxes to be paid were those imposed for the year 1863, without reference to the timé of confirmation), is that the de ■ fendant was to pay the proportion of one-sixth of the amount; being the proportion which the period of time from November 1,1863, to the end of that year would bear to the whole of the year 1863, and unless the evidence is clear, distinct and preponderating, that the written agreement does not express the meaning or intention, of the parties, the latter must prevail.
The only reliable evidence on the part of 'the plaintiff is that of Mi\ McDermot, the attorney who drew the contract. He testified that he was present at the plaintiff’s house at the time the contract was drawn and executed: that the parties and himself only were present: that he asked the defendant when he would be ready to close the matter; he (defendant) stated, that he resided in New Jersey and that he wished to close the matter on the first of November. The witness says, he told plaintiff there would be a difficulty about that, as the taxes would be confirmed in September and become a lien upon' the property : that if defendant wished the closing of the matter delayed until November, he must pay the taxes which would be confirmed in September. “He asked me how the taxes were payable. I told him they were confirmed every September, and that when paid the property would be free from taxes until the following September. After the contract *471 was drawn, lie'said it was not fair that he should pay taxes from September until November, as she (plaintiff) would occupy the house during that period. She said she was willing to pay the proportion of the taxes for that time.” The witness said he then interlined the words, “ the party of the second part to pay proportion of taxes for year 1863, fi'crn November 1, 1863.”
Upon his cross-examination, the witness testified that at the time of making the contract the word “ 1864” was not used by any one; nor was anything said on the subject of who was to pay the taxes for the year, 1883, from January 1,1863, to November 1, 1863. That he supposed the taxes of 1863, being paid, relieved the property until September, 1864: that he supposed the taxes were from September, 1863, to September, 1864, and that what he stated to the defendant was based upon relief .from lien.
The plaintiff’s evidence is chiefly a version of what she understood the agreement about the taxes to be. She, says, however, that the defendant said he would pay all the taxes except from September to November. But Hr. HcDermot testified to no such declaration or agreement.
It does not appear anywhere in the evidence, that the defendant understood the agreement to be as testified to, by Hr. HcDermot, or that he assented to it. HcDermot did not say to him that he was to pay the taxes from January 1,1863, and apart from the defendant’s testimony, it is evident that he did not so understand it, and that he never agreed to pay them. He undoubtedly supposed that the taxes were for the twelve months next succeeding the confirmation, else why did he object to paying from September to November when the plaintiff would occupy the house. Had he understood it, he could have objected with as much and even more force to paying from January to September, when the plaintiff had the house in her possession.
It seems to me quite clear, that there was no mutuality: that the defendant did not understand the agreement to be different from what was reduced to writing, and never assented to any other. I do not attach any importance to what took place at the time the deed was delivered. If the defendant made any admission or promise, then, it was with reference to *472 his previous understanding, that the tax year commenced in September instead of in January. If the case rested on the plaintiff’s evidence alone, it would not, in my opinion, be sufficient to sustain this action, but the defendant not only by his answer under oath, but by his oral testimony at the trial, denies that any other agreement was made, than such as is contained in the written contract. He says, that at the interview spoken of by Hr. HcDermot, Hr. HcDermot said : “ You have no objection to pay your proportion of the taxes. You know they are payable in advance.” To which I replied, “I know nothing about taxes, never having bought property before, but that I was willing to pay proportion of taxes from November, 1863, at which time the property was to be transferred tome.”
Upon the whole of the evidence, the action falls within the principle of the cases, that the allegation of mistake must be supported by proof entirely satisfactory. No doubt Hr. HcDermot understood the agreement as he has testified, but the difficulty is, that,he does not undertake to say that the defendant so understood it or assented to it; at any rate the case is not free from doubt, which it must' be before the court should give relief.
After a careful reading of the evidence, I have not been able to find it sufficient to sustain the finding of the justice. It entirely- falls short of satisfying me that the defendant (whatever may have been the understanding of the plaintiff and her attorney), agreed at any time to pay more than the .proportion from November 1, to January 1. There was therefore no mutual mistake, and a mistake on one side does not authorize the interference of the court. The equity is wholly with the defendant ; for it would be unconscionable to compel him, without the clearest proof of this agreement, to pay the taxes from January to' July, for six months before he made his contract; and from July-to November, when the plaintiff had the use and occupancy of the house.
I think the judgment should be reversed, and a new trial granted, with costs to abide the event.
Robertson, Ch. J.
It is hardly necessary to quote the provisions of the statutes of this State in reference to the collection of taxes, to establish that the fiscal corresponds with the cal *473 endar year (see 1 Rev. Stat., 5th ed., pp. 954 to 977). Of course no part of the year 1864, forms any part of the time for which the taxes for 1863, are assessed. Tiie confirmation of an assessment for taxes creates a lien on land, and renders them collectable, but has nothing else to do with the period for which they are assessed. Taxes are not collectable in advance : and although paying taxes for any one year, may leave the land free from the lien of a tax until the confirmation of the next'yéar’s tax, that does not make the taxes for a specified year a tax for the period between the two confirmations, which is rarely if ever an exact year. Assuming, therefore, that the-parties before executing the contracts of purchase and sale in question had made an agreement, to be embodied therein, and only omitted therefrom by accident.and mistake, to the effect that the defendant should pay the “balance” of the taxes for 1863, to be confirmed and become a li'en on the land in September, after deducting therefrom the proportion thereof from such confirmation until the first of November following, the plaintiff would be entitled to no relief; since such .balance is explained by the words “ the proportion thereof from that date (November 1st) until the confirmation of the annual taxes in September, 1864 because such period formed no part of the fiscal year 1863, for which such taxes were levied.
The decision in this case finds as a fact an agreement between the parties, that the plaintiff would pay such a proportion of the taxes, which should be confirmed in the month of September, 1863, as the time between the date of such confirmation to the first of November, 1863, would bear to the period of a year, and that the residue of such taxes the defendant should pay. It also finds as a fact that the attorney who drew up the contract omitted by mistake to express such contract. What kind of mistake is not stated: from what it originated, or how it occurred. I think the testimony of such attorney clearly shows, that what was inserted in the contract, which is inconsistent with such agreement, was so done deliberately, and, if unintentionally, only under a mistaken idea of the law by such attorney, who acted for the plaintiff alone. The contract was originally drawn, exempting all the taxes for 1863, from the stipulation against incumbrances-, and at the suggestion of the defendant, and by the assent of the plaintiff, it was altered to its *474 present form, solely because the defendant objected to paying taxes for the time the house was occupied by the plaintiff. Such attorney testifies .that he never considered whether “ taxes confirmed in 1863, related back to the first of January of .that year,” and that he supposed that the taxes for 1863, were for the"time between September, 1.863, and September, 1864. Pie also subsequently informed the defendant’s attorney to the same effect, and directed, the defendant’s attention to the written contract. In his letter demanding payment he also reiterated the language of the contract, by saying “ You agreed to pay the ..proportion of taxes from November 1st,” underscoring the word “from.” There is not a particle of evidence of a word being said by the-defendant, or in his presence by others, of his assuming any portion of the year’s tax for 1863, except as specified in the contract as drawn. At the first interview, as testified to by such attorney, the agreement was that the defendant should pay all the taxes, and at the second the charge was made for the reason before stated. We therefore have no right, in the absence of any statement to that effect by hinq to assume that the defendant made the same mistake in regard to the law as plaintiff’s attorney, and executed the contract in order to accomplish the effect the latter intended.* The complaint charges that the agreement omitted was, that the defendant should j>ay the proportion of the taxes from the "1st of November until September, 1864. But the plaintiff testifies that her understanding was, that the defendant should pay the taxes from January 1st to September 23, 1863, and that the reason for it was “ that he got the house so cheap,” although she didn’t know that anything was said on the subject.
If the law had been as the plaintiff’s attorney supposed it to be, there would have been no necessity to reform the contract, in order to compel "the defendant to pay the sum adjudged against him. And he certainly does not testify to any express assumption by the defendant of the proportion of the tax for the time, from January 1st to September 23,1863. We have, then, simply the case of an understanding by the plaintiff, without anything said to that effect by any one, that the defendant was to pay such proportion, and the draft of the contract by her attorney, under the belief inconsistent with such understanding, that it would require the defendant to pay-the proportion of *475 such tax for the time between the 1st of January and sometime in September 1864, which he supposed to be embraced in the agreement. I think it plain that the plaintiff understood the taxes for 1863, which was the only thing talked about, to be for that calendar year, while her attorney understood it to be for an imaginary" fiscal year extending to September 1864; and that being informed by him that at least five-sixths of that tax was to be paid by the defendant, she inferred it must have included the first part of 1863 until September; and that the only reason why he agreed to pay a tax for a house for a share of time long before he occupied it, was its low price. This seems difficult to reconcile with the alleged agreement by the plaintiff to pay the proportion of the tax between the 23rd of September and 1st of November 1863, because she occupied the house during that time, as testified to by such attorney.
II. March, 1865. Motion to amend order for new trial.
The order on the foregoing appeal having been settled, with a .direction that costs be awarded to abide the event, the plaintiff moved for a re-settlement of the order in this respect.
A mistake of the law by the attorney of one of the parties, or a misapprehension of the agreement by the party whose attorney he was, is not sufficient to justify the reformation of a contract. Even a common mistake of the law is not enough (Arthur v. Arthur, 10 Barb., 9). There is no evidence in this case of any complete and final agreement, except in the contract itself. By that, if the law were as was supposed by the plaintiff’s attorney, the defendant would be bound to pay all the taxes paid by the plaintiff, except such part thereof as should be proportioned to "the time between the first of November and the time the taxes should be confirmed in 1864. In that case the action would be prematurely brought, as regarded the payment of the money, as the proportion could not be determined until the day of confirmation should be ascertained.
I cannot therefore find any evidence to sustain any agreement by the defendant to assume any part of the taxes for 1863, except for the'time after the first of November of that year: and I concur in thinking the judgment ought to be reversed, and a new trial had, with costs to abide the event.
TIT. April, 1867. Appeal from order for discontinuance.
A motion was then made by the plaintiff at special term, for an order permitting her to discontinue without costs, which was granted; such motion was made solely upon the pleadings and proceedings in the action, and on an affidavit detailing the proceedings therein. A case, made upon the former' motion for a new trial, was used as containing the evidence produced on the former-trial.
From the order so made this appeal was taken.
By the Court.*—Barbour, J.
This is an action brought to reform an agreement for the sale of lands, and was tried before a justice of this court without a jury. At a late General Term, the court, upon an appeal, directed the judgment to'be reversed and awarded a new trial, with costs to abide the event, upon the sole ground that the evidence given upon the trial was insufficient to authorize such judgment, and an order to that effect was accordingly settled and entered.
A motion is now made on the part of the respondent to so modify that order as to charge the appellant with costs. It has long been the practice in this State, in cases in which judgments have been set aside and new trials directed, in actions- at law, because of the insufficiency of the evidence to warrant the verdict, to charge the appellant with costs (Jackson v. Thurston, 3 Cow., 342; Goodyear v. Ogden, 4 Hill, 104; Bank of Utica v. Ives, 17 Wend., 501; Ward v. Woodburn, 27 Barb., 354). Eo similar practice, however, ever obtained in the court of Chancery, where the entire question of costs was determined by the court upon a final hearing on the merits; nor, since the adoption of the Code of Procedure, has a like rule been extended Reactions of an equitable nature.
We thifik that in cases like this, where the entire question of costs will be in the discretion of the court, and may be adjudicated upon the final hearing, no direction as to costs ought to he made by this general term, on awarding a new trial because of the insufficiency of the evidence.
The order in question will be amended accordingly
J. W. Gerard, for the appellant.
Wm. MeDermot, for the respondent.
Robertson, Ch. J.
Even before the adoption of the present Code, courts of law as well as those of equity, relieved plaintifis from the payment of costs on discontinuing their actions in some’ cases, according to established rules, sometimes even compelling plaintiffs to discontinue without receiving them (The People v. New York Superior Court, 19 Wend., 104). The only established cases in which such privilege was given, w.ere those in which (1.) The plaintiff would be finally exempt from costs, as in cases of executors (Arnoux v. Steinbrenner, 1 Paige, 82), or (2.) The prosecution of the action would be rendered fruitless by matters beyond the plaintiff’s reach, and occurring without his fault as when the defendant was imprisoned for crime or discharged as an insolvent (Lachy v. McDonald, 1 Cai., 116; Steinbeck v. Hallet, 1 Johns., 141), or had a personal privilege, relieving him from liability, such as infancy (Van Buren v. Firt, 4 Wend., 209), or was beyond the jurisdiction of the court (Taacks v. Schmidt, 19 How. Pr., 313). (3.) When the defendant had appeared by fraud (Waterbury Leather Manufacturing Co. v. Krause, 9 Abb. Pr., 175), or where a decision had been reversed or land charged on the strength of which the action was brought. But no case is to be found where the whole merits were inquired into, to determine the possible ultimate escape from paying costs.
ETo statute seems to have given costs to a defendant upon a voluntary or compulsory dismissal of the bill, until the passage of the Revised Laws of 1813. They contained a general provision, giving costs to the defendants in such cases (2 Rev Laws, 346, § 16). Yet subsequent thereto, previously established exceptions were'recognized, and such recognition was afterwards adopted by the revisors in 1830, and expressly incorporated in their revision (2 Rev. Stat., 613, § 1), in cases “ where according to the practice of the court, costs would not be awarded against the complainant upon a decree or judgment, upon the hearing of the cause.” This received a judicial construction in Hamersley v. Barker (2 Paige, 373), by the late learned Ohan *478 cellor of this State. He expressly declared therein “ That it never could have been the intention of the legislature, to compel a court to examine and decide upon the whole merits of the complainant’s original claim for the purpose of ascertaining whether he would he liable for costs at the hearing,” and there fore construed such exception, as only including^ cases where the complainant, prvmafaoie, would not be liable for costs. A trial of all the issues in an action, upon affidavits made ex parte, merely t'ó decide the right to costs, would be a startling innovation, contrary to all the practice of the court. It would lead to harassing a defendant by experiments, and to useless-, if not vexatious litigation. The defendant might be ■ compelled to defend himself twice in one action, without a similar risk on the part of the plaintiff. Both reason and authority are against any. such privilege, and unless the authority* of Hamersley «. Barker {ubi sup.) can be shaken by some statutory charge, its doctrine must govern in this case.
In a case formerly decided at special term in this court, sanctioned by all the justices in its conclusions (Gallagher v. Egan, 2 Sandf. S. Ct., 743), the learned justice who gave the opinion without noticing the provision of the revised laws of 1813, before cited, stated that the provision in.the revised statutes, before referred to (Vol. 2, p. 613, § 1), has been -repealed, but did not state when or how. It is certainly not inconsistent with any provision of the Code, unless it be the 306th section.. -And if not inconsistent with "that it is still in -full force (§ 469). The 304th and 805th, designate the kinds of actions.in which the plaintiff or defendant succeeding are to be allowed costs, but it must be .only on a recovery. The 306th. section leaves the allowance of costs in all other actions, meaning of .course on their final disposition after trial, or otherwise, to the discretion of the court. These three sections dispose of all questions of costs on final judgment. The actions intended by such last section, are held to be those in equity (Hines v. Myers, 4 How. Pr., 356; Gallagher v. Egan, 2 Sandf., 742; Wood v. Brooklyn Eire Ins. Co., 10 How. Pr., 154; Sunny v. Roach, 4 Abb. Pr., 16; Eagleson v. Clarke, 2 Abb. Pr., 364; Webb v. Daggete, 2 Barb., 10; O’Hara v. Brophy, 24 How. Pr, 379), including of course actions of foreclosure. of a mortgage (Barton v. Cleveland, 16 How. Pr., 364). There was *479 therefore ample authority in the court, to grant a discontinuance without payment of costs in the' case first referred to,—the action in which was to foreclose a mortgage,—if they could have done so, prior to the • passage of the Code and the revised statutes.
In that case, the defendant hound to discharge the mortgage in question, offered to pay it without costs, but the original mortgagors and assessment creditor, whose judgment had been paid, insisted on being paid their costs before a discontinuance was allowed. The court held, substantially, that as they would not be entitled to any, except in case of sale and a fund brought into court, they were not entitled to prevent a discontinuance, where the right to such sale was defeated by the payment of the debt. This was in accordance with all previous decisions, and was not made upon the merits, since the plaintiff’s right was acknowledged, and he could gain nothing by going on with the action. A repeal of the provision of the revised statutes already alluded to (vol. 2, 613, § 1), is not necessary to sustain such decision, and the remark of the learned judge to that effect may therefore be considered as a mere obiter dictum.
The repeal of all statutes establishing or regulating costs and fees of attorneys and others in civil actions, by the first paragraph of the 303rd section of the Code, only extends to restrictions upon bargains between attorneys and clients, as it is immediately followed by an express renewal of them and a declaration, that the measure of the compensation of the former should be left to the agreement of both, and that is succeeded in the same section by a provision giving what it calls costs to the prevailing party, upon a judgment, by way of indemnity for his expenses. But only upon a judgment. The whole section was evidently intended, merely to make the costs allowed in a cause the property of the party and not of his attorney, and not to repeal prior provisions as to costs except as to their amount.
But even if the provisions of the revised laws of 1813, and revised statutes before referred to had been repealed, and the discretion mentioned in the 306th section of the Code, could be exercised in regard to the discontinuance of actions as well as the determination of them, such discretion could not be prudently exercised in undertaking to anticipate what would be *480 the judgment of the court upon a trial by witnesses, examined viva voce, and subjecting the defendant to the expense and annoyance of a double trial in the action. And it never was exercised to that extent before any statutory regulation on the subject.
IV. April, 1867. Motion for re-taxation of costs
Defendant therefore made out a bill of his costs, and gave notice to plaintiff of the presentment thereof to the clerk of the court for adjustment. Both plaintiff- and defendant appeared before the clerk, and plaintiff objected to several items of the bill, which were stricken out by the clerk.
Of the items thus stricken out, six were for the costs and disbursements on the appeal to the general term, from the judgment in plaintiff's favor, and amounted in the aggregate to §148.25.
*480 Moreover, this action was one of a legal as well as an equita ble nature; the plaintiff demanded as relief, the reimbursement of a tax paid, which she claimed under the agreement if reformed. The 304th section of the Code specifies as one of the kinds of actions in .which the plaintiff must be allowed costs, those which are “for the recovery of money,” provided he recover fifty dollars, and the next section gives costs to the defendant in the same actions, unless the plaintiff be entitled to them. In this case the plaintiff demanded and must have recovered, if any thing, over fifty dollars on the trial of the issues, or have failed in her action, altogether. There was therefore no discretion vested in the court, as to the allowance of costs, if "the case had gone on to trial.
Ro opinion was given on the decision of the motion, but the only reason urged before us for the right to discontinue without costs, was that it being an equitable action, the court on the trial had a discretion to exempt the plaintiff from costs. This, on settled principles, they would have no right to do. But no answer was made to the objection,' that being also an action for the recovery of money, and the plaintiff therefore necessarily .entitled to costs if she succeeds, she is also bound to pay them if she fails.
For both reasons the order appealed from must be reversed with costs.
The order was accordingly reversed with costs of. appeal, and costs of opposing the motion below.-
One for costs of opposing motion to modify the first general term order,........................... $10 00
One for costs of opposing motion to discontinue without costs, ................................ §10 00
One for costs before argument of second appeal,.... §20 00
One for argument of second appeal,................ $40 00
One for printing papers on second appeal,......... §12 90
Defendant, on this motion for a retaxation, sought to reverse the clerk’s decision in striking off these items. «
Mr. McDermot, for the defendant.
Mr. Ridgway, for the plaintiff.
Jones, J.
The defendant is not in a position at present to tax his costs. The action is still pending, no determination of it having yet been made. A new trial has been. granted to plaintiff, and she may bring the cause on for trial. The order which she obtained discontinuing the action without costs having been vacated, the action stands in the same position as it did before that order was made.
These remarks apply to all the items of the bill, except the. costs given by the last general term order. As to these costs, however, they are interlocutory ; and until a determination of the action, the clerk has no power to tax them, unless expressly authorized by the court.
Both these points, however, having been waived by plaintiff’s counsel, and the motion having been submitted to me by them for a decision on the merits, I will proceed to so consider it.
The decision of the clerk, in refusing to allow the costs of the first appeal, was correct. The granting of the costs of that appeal rested entirely in the discretion of the general term, which ordered the new trial. That general term did not see ■fit to give costs'; neither the clerk nor a judge at special term, nor any general term, except on a re-argument ordered, can review that decision. It is urged that as the order of general term is silent on the subject of costs, the usual costs follow *482 the decision. This is not so. The subject of costs is a matter of statutory regulation. A party obtains costs only through the statute, and obtains them only in such cases where the statute gives them. Row looking at the provisions of the Code on the-subject of costs, it is evident that'where a new trial is ordered on appeal, costs of the appeal are not given ot course to either party, but the allowance of them is placed in the discretion of the general term that heard the appeal. Being thus in the discretion of the general term, that discretion must be affirmatively exercised in favor of a party in order to entitle that party to them. If it is. not so exercised, the case is one where»no provision for costs to either party is made.
This is the view taken by the court in Nelson v. De Forrest, 6 How. Pr., 413, and in Savage v. Darrow, 4 How. Pr., 74.
For the same reason the item of costs for opposing motion to modify the order must be disallowed.
The general term on the last appeal having given to .defendant the costs of that appeal, and costs of opposing motion to discontinue without costs, those costs are probably taxable, and the question is, how much these costs are ?
The general term- order did not specify the amount of costs. When such is the frame of the order,, the full amount of the costs given by statute for the proceedings for which the court adjudges costs to a party is taxable.
Upon this rule the sum of ten dollars is taxable, as the.costs of opposing the motion to discontinue without costs. The only remaining question is, as to what amount of costs may be taxed for the second appeal.
The appeal in question is from an order which in effect determined the action, and prevented a judgment "from which an appeal might be taken. It therefore fell within the cases enumerated in section 349, and consequently section 307, by its express terms, does not apply. Unless the appeal can be regarded as a motion made at general term, then, although the general term gave costs, yet as the statute fixes no amount-, no costs could be taxable.
But such an appeal is to be deemed as a motion made at general term, consequently the costs given are motion costs; which are ten dollars, and the disbursements for printing the • *483 appeal papers (Savage v. Darrow, 4 How. Pr., 74; Nellis v. De Forrest, 6 How. Pr, 412).
On the argument of this motion, it seemed to be supposed by defendant’s attorney that the decision of the general term, on the last appeal, had some bearing on the questions raised on the motion. That decision, however, was simply as to the power of the court to allow a plaintiff, before the determination of the action, to withdraw his suit without payment of costs, .for the purpose of avoiding a decision whereby he might be charged with costs. It in no way touched upon the question as to the power of a judge or court, upon making a decision, to grant or withhold, by that decision, the costs of the proceedings which resulted in the decision. The two subjects are entirely distinct, and the principles relating to each are equally distinct.
It results from, the views above expressed, that á re-taxation must be ordered for the purpose of enabling the clerk to add to the bill of costs, these items.
Costs of opposing motion to discontinue without
costs,....................................... $10 00 Costs on second appeal' to general term,........... $10 00
Disbursements for printing papers on 2nd appeal,.. $12 90
Ho costs of this motion to either party.

Present, Robertson, Ch. J., Monell and Garvin, JJ.

 Present Barbour, Monell and Garvin, JJ,